# Exhibit A
# Ditchey Declaration

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (CLEVELAND)**

| | |
|---|---|
| A. PHILIP RANDOLPH INSTITUTE OF OHIO, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>FRANK LAROSE, in his official capacity as Secretary of State of Ohio,<br><br>*Defendant*. | CASE NO. 20-cv-01908<br><br>JUDGE DAN A. POLSTER<br><br>**DECLARATION OF DAVID DITCHEY** |

I, Mr. David Ditchey, am over the age of 18 and fully competent to make this declaration. I declare the following:

1. For 37 years and 11 months, I was a letter carrier with the United States Postal Service ("USPS"). I last worked at the Post Office in Warren, Ohio, at 201 High Street NE, Warren, OH 44481 ("Warren Post Office"). During that time, I also was Vice President and member of the National Association of Letter Carriers ("NALC") Branch 385 (Youngstown), as well as Local Business Agent for the NALC.

2. I retired from the USPS on September 1, 2018. However, I remain active with the NALC, as a Local Business Agent, traversing the State, working with NALC branches and their presidents, officers and other letter carrier members on grievances and other letter carrier matters. Over the course of time, I have covered the gamut of issues for the NALC and its members, including, but not limited to, letter carrier overtime, safety, overtime desired lists ("ODLs"), casual employees, workroom floor issues, and other collective bargaining issues.

3. By virtue of my nearly 38 years as a letter carrier, I have acquired and maintain unique knowledge, experience and insights about USPS work processes, machines, systems, schedules, routines, automation efforts, policies, procedures, protocols and records and record-keeping (collectively, "USPS Systems and Processes"), as they pertain to the USPS' receiving, handling, sorting, preparing for delivery, and delivering mail to United States homes and businesses.

4. As a result of my continued work and relationships with Ohio NALC branches and their presidents, officers and employees, as well as former colleagues of the Warren Post Office, I have been made privy for my providing observations, evaluation and assessment of the most

recent actions and changes to the USPS under or at the direction of U.S. Postmaster General Louis DeJoy (Mr. DeJoy).

5. As a result of my years of experience and knowledge with USPS Systems and Processes, I have a unique understanding of how and why the changes under or by Mr. DeJoy to the USPS is adversely prejudicing USPS letter carriers' and other employees' from doing their jobs; making it virtually impossible for them to perform at maximum levels of efficiency; getting in the way of employee and customer satisfaction; causing USPS employees and the public from having any great deal of confidence in the USPS.

6. I have served as a letter carrier for more than 37 general election periods and for nearly 100 cycles. I also have knowledge, background, experience and skill derived from serving as a letter carrier for mail high volume periods, such as the Holidays. I, therefore, have specialized knowledge that may help the Court for which this Declaration is offered and provided to understand the impact of millions of Ohio absentee ballots' being cast before election day through the U.S. mail within a limited duration of time, the expectations Ohio voters have and deserve to have for their mail-in ballots to arrive to their board of elections within time permitted to be counted.

7. But for my being retired from the USPS, I could face severe opposition by offering and providing this Declaration, for fear of retribution and losing my status and position with the USPS. Recently, the USPS issued a memorandum prohibiting USPS employees from speaking to members of the press. See Exhibit "A". However, the general consensus among USPS employees and retirees is that the memorandum is a warning shot for all USPS to stifle any and all outside communications regarding the problems or issues the USPS now daily faces.

8. When I first started as a letter carrier for the USPS, I, along with other letter carriers, would have 6-12 feet of mail to sort, equating to 1,600 to 2,000 mail pieces. We would organize the mail pieces to correspond with our respective routes and we would then undertake to deliver mail to our respective assigned residential and business addresses.

9. Over the course of time, certain new technologies were introduced to the USPS for letter carriers for sorting mail by route and route sequence.

10. Delivery point sequence (DPS) was one such technology, which came into play in the 1990s. DPS is an automated mail sorting process that puts carrier routes into delivery order. DPS was designed to eliminate the need for the majority of additional sorting at delivery units. DPS machines were located at the Warren Post Office and other local post offices. At first, several bugs in the technology had to be addressed for the DPS equipment. However, over time, DPS began to work quite well, saving time in sorting, making delivery of mail more efficient, and providing better services to customers.

11. Previous to Mr. DeJoy's becoming U.S. Postmaster General, there was something called next day delivery of regular mail. For longer distances, there was two to three day delivery. Today, delivery times are much longer.

12. In his very short time heading up the USPS, Mr. DeJoy has walked the USPS countless steps backwards. Under Mr. DeJoy, the USPS has newly instituted changes to USPS Systems and Processes compromising its patrons and employees. They include dismantling and removing of DPS and other sorting machinery from hundreds of local post offices; creating additional complexities and logistics that only work to slow down the mail and risk of the mail getting lost or missorted; restricting letter carrier overtime, including for mail high volume times; requiring all delivery trips of trucks depart on time, whether or not any mail is on the truck or not; removing Collection Box® receptacles ("Blue Boxes") from streets, thus making it harder for customers to use the USPS; prohibiting late trips to serve customer needs, even in cases where customers desperately need their medications delivered; not addressing staff shortages, leaving many routes to no be delivered; and reducing staff for local post offices for which machines have been dismantled and removed. See also Exhibit "B".

13. Although these actions and changes are claimed to be for cost-cutting and budgeting purposes, they, taken together, have a pervasive negative impact on the USPS, as a service to Ohioans and other Americans. Mr. DeJoy's changes and actions first went into effect in July of 2020. The first mail high volume time, therefore, that Ohioans will get to see the true impact and consequences of these changes and actions will be the 2020 general election early voting period of between October 6, 2020, and November 2, 2020. At that time, it is projected that millions of Ohioans will be casting absentee ballots, relying on the USPS to deliver for them.

14. To help illustrate the impact of Mr. DeJoy's actions, a letter mailed at the Warren Post Office or mailbox to someone in Warren does not stay in Warren. Instead, that letter is routed through and to one or more other USPS points, including, potentially, to locations outside the State of Ohio. The first intended end destination for that letter is to a USPS facility with one of USPS' remaining DPS machines. The idea is get rid of as many machines and their staff and direct mail to remaining locations, taking the remaining DPS machines to full capacity. Once the letter arrives at a remaining DPS facility, the letter is then commingled with hundreds of thousands and millions of other mail pieces from across Ohio and the nation. Assuming the DPS machine is operating functionally, the DPS machine then designates the letter from Warren for Warren. Once that occurs, the letter indirectly or directly is routed back to Warren.

15. Overall, Mr. DeJoy's actions of dismantling as many machines as possible and centralizing mail to only a select number to a limited number of DPS locations delays mail delivery by 4-6 days when mail is at low volume. When mail is at high volume, such as near the time of the general election for millions of absentee ballots, it is likely that all processing machinery will be stretched to over-capacity, not to mention at greater risk of breaking down. If stretched to over-capacity, millions of pieces of mail will need to "wait their turn" for DPS sorting. In that case, I project mail could be subject to an additional 2-3 days of delay, causing mail delays of 6-9 days. In the event of DPS machines breakdown or need to be taken offline for servicing, mail could be subject to yet additional delays, of another 1-2 days, bringing the number of days of delay due to Mr. DeJoy's DPS actions to 7-11 days.

16. The potential mail delays of 7-11 days during the height of mail-in voting do not include or take into account that overtime due to understaffing will be a necessity for letter carriers to cover their routes at election time. However, Mr. DeJoy wants to restrict overtime, including for election time. What that means is that letter carriers well may have to wait the next day to finish their routes. What that, in turn, means is that letter carriers will need to try to make up for lost time from the previous day. As absentee ballots can be expected to cause mail high volume times for several days, the backlog on mail delivery may only continue to compound. Although the USPS can rely on city carrier assistants ("CCAs") to help reduce overtime demands, understaffing of CCAs has made that option less available. However, again, Mr. DeJoy has restricted overtime. At a minimum, therefore, it is not unreasonable to project mail delivery delays of between 2-3 days, bringing the potential number of days of delay to between 9-14 days.

17. Further compounding mail delivery days are Mr. DeJoy's dictates that all USPS delivery and other trucks stringently stick to a strict schedule, leaving exactly on time, whether or not mail has been put onto the trucks. This is where people may see or read stories about USPS trucks' driving around without any mail. By not waiting until mail is loaded onto trucks, mail that is not loaded would need to wait until the next day. This is the case, whether or not the trucks are those going to or from facilities with DPS machines or are local post office delivery trucks. For that reason, mail be delayed by up to a further additional 1-2 days, bringing the potential number of days for absentee ballots to arrive at the board of elections to between 10-16 days.

18. Finally, add to the above the fact that Sundays are off days, in which case absentee ballot mail not get delivered from the time ballots are mailed until 11-17 days later.

19. For these reasons stated above, given USPS Systems and Processes, as negatively impacted by Mr. DeJoy's actions and changes, Ohioans should be very wary and proceed with extreme caution before trying to cast absentee ballots by mail, unless they do so well prior to election day. What is more, the USPS already has advised Ohio Secretary of State Frank LaRose of the real potential for mail delays during Ohio's early voting period. See Exhibit "C".

20. Given USPS' problems and issues as a result of Mr. DeJoy's changes and actions, sadly and regrettably, I believe Ohio voters should consider finding a viable alternative to casting mail-in ballots, including by ballot drop boxes, to the extent such are made adequately available to Ohio voters.

I declare the following to my Declaration on the above matters, based on my trade knowledge, background, experience, and insights into the USPS and the projected impact of Mr. DeJoy's changes to USPS Systems and Processes.

Executed on SEPTEMBER 03, 2020

David A. Ditchey

David Ditchey

# Exhibit A to
# Ditchey Declaration

GREATER MICHIGAN DISTRICT

UNITED STATES POSTAL SERVICE.

August 14, 2020

ALL GMD DISTRICT EMPLOYEES, PLANT MANAGERS, POSTMASTERS GMD

SUBJECT: Guidelines for Handling Local Media Inquiries

The Postal Service continuously strives to project a positive image, protect its brand, and present a unified message to the customers and communities it serves. So it is imperative that one person speaks on behalf of the Postal Service to deliver an appropriate message and to avoid giving misinformation to the media. Here are our district guidelines for how to handle media requests for official comment, including newspapers, radio, television, and social media such as Twitter and Facebook.

The most important step when receiving a media inquiry, request for information, or request for comment is to refer the media representative to the proper person. All media requests for official comment should be referred to Sabrina Todd at 517-337-8722 (work), 616-881-6937 (cell), or sabrina.a.todd@usps.gov. If you are a craft employee, you should contact your supervisor or manager, who will refer the request to Sabrina or the appropriate communications specialist. All offices are encouraged to keep this contact information close at hand for quick reference.

If you are contacted by a media representative, please respond politely that you are not authorized to respond on the Postal Service's behalf, but you will have an authorized person contact the representative. To that end, please ask the representative for this information:

- The name of the media representative;
- The name of the media organization;
- The representative's contact information (phone number and e-mail address); and
- A brief summary of the information requested.

After you have gathered that information, contact Sabrina Todd by phone or e-mail so an appropriate response can be developed (again, craft employees should first contact their supervisors or managers). Avoid the temptation to "answer a few questions." Keep in mind that, while most media representatives will identify themselves up front, sometimes they do not. If you are dealing with a customer, especially one who asks a series of questions, it is perfectly appropriate to ask, "Are you a member of the media?" Asking this specific question will help ensure your interaction is not used as the basis for any kind of "official" Postal Service statement or position.

Where a media inquiry could result in negative or controversial coverage, it is crucial that the Postal Service provide an official response as quickly as possible. So that such a response can be prepared, employees should contact Sabrina Todd immediately. She will work with the appropriate functional areas to develop a response that will be reviewed and approved before responding to the media.

Please make sure that all employees understand this policy. Thank you.

Aaron B. Lawson
District Manager (A)

# Exhibit B to Ditchey Declaration

# Mandatory Stand-Up Talk: All Employees

**July 10, 2020**

## Pivoting For Our Future

- The Postal Service has a long history of service to the nation, and we take pride in our ability to deliver mail and packages efficiently, timely, and safely.
- Right now, we are at a critical juncture in our organization and must make immediate, lasting, and impactful changes in our operations and in our culture.
- This operational pivot is long overdue and today, we are talking about the first step in a journey we must take together, for the health and stability of the Postal Service.
- Every single employee will receive this information, no matter what job they perform, so remember that YOU are an integral part of the success we will have – again, by working together.
- The initial step in our pivot is targeted on transportation and the soaring costs we incur, due to late trips and extra trips, which costs the organization somewhere around $200 million in added expenses.
- The shifts are simple, but they will be challenging, as we seek to change our culture and move away from past practices previously used.
- Specific examples of transportation changes being implemented immediately (today):

✓ All operations must meet our 24-hour clock commitment
✓ All trips will depart on time (Network, Plant and Delivery); late trips are no longer authorized or accepted
✓ Extra trips are no longer authorized or accepted
✓ There must be proper annotation in the scanner, if a Contractor Failure occurs
✓ All PVS/HCR drivers must be notified that trips depart on time.
✓ Function 4 must start on time and end on time and we must make scheduled DUT
✓ Carriers must begin on time, leave for the street on time, and return on time
✓ Carriers must make the final dispatch of value; no additional transportation will be authorized to dispatch mail to the Plant after the intended dispatch
✓ The right mail must go on the right truck – every time
✓ ALL EMPLOYEES have an essential role with trips departing on time.

- One aspect of these changes that may be difficult for employees is that – temporarily – we may see mail left behind or mail on the workroom floor or docks (in P&DCs), which is not typical.
- We will address root causes of these delays and adjust the very next day.
- Any mail left behind must be properly reported, and employees should ensure this action is taken with integrity and accuracy.

- As we adjust to the ongoing pivot, which will have a number of phases, we know that operations will begin to run more efficiently and that delayed mail volumes will soon shrink significantly.
- More information will be shared as we fully and swiftly implement these strategies.
- You play a direct role in the success of the Postal Service, and your cooperation and teamwork are appreciated.
- This is a critical time for us, when decisive, quick, and meaningful action is needed.
- This operational pivot will ensure we can secure our future as a world-class service provider, improving our performance to fulfill our core mission of service to our customers.
- Thank you for your support and your teamwork.

# Exhibit C to
# Ditchey Declaration

THOMAS J. MARSHALL
GENERAL COUNSEL
AND EXECUTIVE VICE PRESIDENT

UNITED STATES
POSTAL SERVICE

July 30, 2020

Honorable Frank LaRose
Ohio Secretary of State
22 North 4th Street, Floor 16
Columbus, OH 43215-3668

Dear Secretary LaRose:

Re: Deadlines for Mailing Ballots

With the 2020 General Election rapidly approaching, this letter follows up on my letter dated May 29, 2020, which I sent to election officials throughout the country. That letter highlighted some key aspects of the Postal Service's delivery processes. The purpose of this letter is to focus specifically on the deadlines for requesting and casting ballots by mail. In particular, we wanted to note that, under our reading of Ohio's election laws, certain deadlines for requesting and casting mail-in ballots are incongruous with the Postal Service's delivery standards. This mismatch creates a risk that ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them.

As I stated in my May 29 letter, the two main classes of mail that are used for ballots are First-Class Mail and USPS Marketing Mail, the latter of which includes the Nonprofit postage rate. Voters must use First-Class Mail (or an expedited level of service) to mail their ballots and ballot requests, while state or local election officials may generally use either First-Class Mail or Marketing Mail to mail blank ballots to voters. While the specific transit times for either class of mail cannot be guaranteed, and depend on factors such as a given mailpiece's place of origin and destination, most domestic First-Class Mail is delivered 2-5 days after it is received by the Postal Service, and most domestic Marketing Mail is delivered 3-10 days after it is received.

To account for these delivery standards and to allow for contingencies (e.g., weather issues or unforeseen events), the Postal Service strongly recommends adhering to the following timeframe when using the mail to transmit ballots to domestic voters:

- **Ballot requests:** Where voters will both receive and send a ballot by mail, voters should submit their ballot request early enough so that it is received by their election officials at least 15 days before Election Day at a minimum, and preferably long before that time.

- **Mailing blank ballots to voters:** In responding to a ballot request, election officials should consider that the ballot needs to be in the hands of the voter so that he or she has adequate time to complete it and put it back in the mail stream so that it can be processed and delivered by the applicable deadline. Accordingly, the Postal Service recommends that election officials use First-Class Mail to transmit blank ballots and allow 1 week for delivery to voters. Using Marketing Mail will result in slower delivery times and will increase the risk that voters will not receive their ballots in time to return them by mail.

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1100
PHONE: 202-268-5555
FAX: 202-268-6981
THOMAS.J.MARSHALL@USPS.GOV
www.usps.com

RECEIVED
AUG 03 2020
SECRETARY OF STATE

- **Mailing completed ballots to election officials:** To allow enough time for ballots to be returned to election officials, domestic voters should generally mail their completed ballots at least one week before the state's due date. In states that require mail-in ballots to be *both* postmarked before Election Day *and* received by election officials by a specific date that is one week or more after Election Day, voters may generally mail their ballot up until November 2, the day before the 2020 general election. However, voters who mail in their ballots on November 2 must be aware of the posted collection times on collection boxes and at the Postal Service's retail facilities, and that ballots entered after the last posted collection time on a given day will not be postmarked until the following business day.

Under our reading of your state's election laws, as in effect on July 27, 2020, certain state-law requirements and deadlines appear to be incompatible with the Postal Service's delivery standards and the recommended timeframe noted above. As a result, to the extent that the mail is used to transmit ballots to and from voters, there is a significant risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned promptly, and yet not be returned in time to be counted.

Specifically, it appears that a completed ballot must be postmarked before Election Day and received by election officials within 10 days after the election. If that understanding is correct, voters who choose to mail their ballots may do so on or before Monday, November 2. However, it further appears that state law generally permits voters to apply by mail for a ballot as late as 3 days before the election. If a voter submits a request at or near the deadline, and the ballot is transmitted to the voter by mail, there is a significant risk that the ballot will not reach the voter before the state's postmark deadline of November 2, and accordingly that the voter will not be able to use the ballot to cast his or her vote. That risk is exacerbated by the fact that the law does not appear to impose a time period by which election officials must transmit a ballot to the voter in response to a request.

To be clear, the Postal Service is not purporting to definitively interpret the requirements of your state's election laws, and also is not recommending that such laws be changed to accommodate the Postal Service's delivery standards. By the same token, however, the Postal Service cannot adjust its delivery standards to accommodate the requirements of state election law. For this reason, the Postal Service asks that election officials keep the Postal Service's delivery standards and recommendations in mind when making decisions as to the appropriate means used to send a piece of Election Mail to voters, and when informing voters how to successfully participate in an election where they choose to use the mail. It is particularly important that voters be made aware of the transit times for mail (including mail-in ballots) so that they can make informed decisions about whether and when to (1) request a mail-in ballot, and (2) mail a completed ballot back to election officials.

We remain committed to sustaining the mail as a secure, efficient, and effective means to allow citizens to participate in the electoral process when election officials determine to utilize the mail as a part of their election system. Ensuring that you have an understanding of our operational capabilities and recommended timelines, and can educate voters accordingly, is important to achieving a successful election season. Please reach out to your assigned election mail coordinator to discuss the logistics of your mailings and the services that are available as well as any questions you may have. A list of election mail coordinators may be found on our website at: https://about.usps.com/election-mail/politicalelection-mail-coordinators.pdf.

We hope the information contained in this letter is helpful, and please let me know if you have any questions or concerns.

Sincerely,

Thomas J. Marshall

RECEIVED
AUG 03 2020
SECRETARY OF STATE