IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| A. PHILIP RANDOLPH INSTITUTE OF OHIO *et al.*, | |
| Plaintiffs, | Civil Action No. 1:20-cv-01908 |
| v. | Judge Dan Aaron Polster |
| FRANK LAROSE, in his official capacity as Secretary of State of Ohio, | |
| Defendant. | |

**REPLY OF DONALD J. TRUMP FOR PRESIDENT, INC., THE OHIO REPUBLICAN PARTY, THE REPUBLICAN NATIONAL COMMITTEE, AND THE NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE IN SUPPORT OF THEIR MOTION TO INTERVENE**

Donald J. Trump for President, Inc., the Ohio Republican Party, the Republican National Committee, and the National Republican Congressional Committee (the "Republican Committees") satisfy the requirements to intervene as of right in this case under Federal Rule of Civil Procedure 24(a) to protect their distinct interest in upholding current law governing the locations of ballot drop boxes ahead of the November election. At a minimum, the Court should grant the Republican Committees permissive intervention under Rule 24(b) because they meet all the requirements and their participation will not delay the case or its resolution.

In their opposition brief, Plaintiffs challenge two of the elements for intervention of right and one for permissive intervention. *First*, they assert that the Republican Committees lack a substantial interest in a case wherein Plaintiffs seek a last-minute change to the rules for an election. *Second*, they claim that the Secretary of State adequately represents the Republican

Committees' interests simply because both parties deny that Plaintiffs are entitled to relief. *Third*, they argue incorrectly that intervention would delay and complicate this case.

These and Plaintiffs' other arguments are unpersuasive and provide no reason to depart from the Sixth Circuit's longstanding application of Rule 24 "in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). The Court should grant the Republican Committees' Motion to Intervene.

## ARGUMENT

**I. THE REPUBLICAN COMMITTEES HAVE A RIGHT TO INTERVENE UNDER RULE 24(a).**

The Republican Committees' Motion established that the Court should grant intervention of right because they meet all four elements under Rule 24(a): (1) the Motion is timely; (2) the Republican Committees have a substantial interest in the subject matter of this case; (3) they can protect that interest only by intervening; and (4) the existing parties do not adequately represent that interest. *See* FED. R. CIV. P. 24(a)(2); Motion to Intervene ("Mot.") 5–9. Plaintiffs challenge only whether the Republican Committees have a substantial interest and adequacy of representation. Their arguments fail on both fronts.

**A. The Republican Committees Have A Substantial Legal Interest In The Subject Matter Of This Case: The Rules Governing The Upcoming Election.**

As the Republican Committees explained in their Motion, they have a substantial legal interest in the subject matter of this case—namely, preserving the existing legally valid competitive environment in which the Republican Committees and their members, candidates, and voters participate. *See* Mot. 6–7. Given that the Sixth Circuit subscribes to an "expansive notion of the interest sufficient to invoke intervention of right," *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (citation omitted), this is more than enough.

Plaintiffs disagree, arguing that one of Ohio's two major political parties, two national committees, and the campaign for reelection of the President of the United States have no interest in the rules governing an election. They are wrong.

*First*, Plaintiffs assert that the Republican Committees do not "have a unique interest in the outcome of this case." Opposition ("Opp.") 4. To the contrary, the Republican Committees, as active participants in Ohio elections, have a direct interest in defending laws that protect the reliability and integrity of those elections, and they will be negatively affected if those laws are enjoined. Changing the rules for the delivery of absentee ballots and absentee ballot applications *will* impact the upcoming election; that is the entire point of Plaintiffs' suit. Such changes alter the "competitive environment" and bring into play "a broader range of competitive tactics than [the] law would otherwise allow." *Shays v. FEC*, 414 F.3d 76, 85–86 (D.C. Cir. 2005). This "could affect candidates running as Republicans and voters who [are] members of the Ohio Republican Party." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

In response, Plaintiffs assert that the Republican Committees' "specific interest[s] in electing Republicans" and maintaining the "competitive environment" are "not implicated in this case." Opp. 4. This argument is akin to a claim that changing the rules of a football game in the fourth quarter would have no impact on the teams. An order enjoining Directive 2020-16 and authorizing all 88 Ohio counties to establish additional ballot drop boxes at their discretion mere weeks before absentee voting begins on October 6 would substantially alter the "competitive environment" and would affect how the Republican Committees must deploy their resources in response. Nor is it relevant if Plaintiffs' requested relief would allegedly "benefit all Ohio voters regardless of party," Opp. 4, a claim that the Republican Committees dispute. Plaintiffs' subjective

assessment of the desirability of their requested relief simply does not undercut the fact that the Republican Committees have "an interest in the subject matter of this case." *Blackwell*, 2005 WL 8162665, at *2.

While the Republican Committees oppose Plaintiffs' claims and requested relief, their interests are the mirror image of the interests Plaintiffs assert in this suit. Plaintiff A. Philip Randolph Institute, for example, alleges it has had to "shift its resources" because of Directive 2020-16 and must "devot[e] significant time and resources" to educating its members about the need to request absentee ballots early. Compl. ¶ 17. Plaintiffs League of Women Voters of Ohio and Ohio State Conference of the NAACP make similar allegations. *See id.* ¶¶ 21, 24. If the Organizational Plaintiffs have a sufficient interest in this case because they must use resources due to the current legal framework that they would rather use elsewhere, then it follows that *changing* this framework so close to the election would force the Republican Committees to expend resources that they currently plan to use elsewhere.

*Second*, Plaintiffs argue that the Republican Committees have only a "generalized interest" in upholding the law. Opp. 5. Not so. As other courts have recognized, political parties have an interest in litigation challenging the rules governing absentee ballots. *See Priorities USA v. Nessel*, 2020 WL 2615504, at *4–5 (E.D. Mich. May 22, 2020); *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020).

The cases Plaintiffs cite in response are inapposite. Three did not involve attempts to intervene in election-law cases and so shed no light on the relevant interests. *See* Opp. 4–5. In one case, the proposed intervenors sought to raise a "tangential" argument foreclosed by Supreme Court precedent. *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013). In the other two, the proposed intervenors had no interest other than ensuring that the government

followed the law. *See Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007); *Sokaogon Chippewa Comm. v. Babbitt*, 214 F.3d 941, 947–48 (7th Cir. 2000). Here, by contrast, the Republican Committees' interests in the existing election rules are distinct from the general public's interest in the constitutionality of any given law.

The election-law cases Plaintiffs cite do not change things. *See* Opp. 5. In *League of Women Voters of Michigan v. Johnson*, the court noted that state legislators' "official interest" in the constitutionality of Michigan's redistricting laws was "in tension with the principle of separation of powers," so they could not intervene on the State's behalf. 2018 WL 3861731, at *1 (E.D. Mich. Aug. 14, 2018). It then rejected the notion that the legislators had a property interest in their elected positions (or reelection prospects). *Id.* at *2. In the other case, the proposed intervenors had interests only in upholding legislation they supported and in fraud-free elections. *See One Wisconsin Institute, Inc. v. Nichol*, 310 F.R.D. 394, 396–97 (W.D. Wis. 2015). To be sure, the Republican Committees have an interest in ensuring Ohio conducts secure elections and in Republican candidates' electoral prospects. But they have an additional, pressing interest these cases did not address: an interest in preventing last-minute changes to the election rules that directly affect their candidates and voters.

*Finally*, Plaintiffs' arguments contradict the Sixth Circuit's lenient approach to a proposed intervenor's interest under Rule 24(a). *See Grutter*, 188 F.3d at 398. Courts are to resolve "close cases" "in favor of recognizing an interest under Rule 24(a)." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). So even if it were a close call (and it is not), the Republican Committees' interests are sufficient for intervention of right under the standard applied in this Circuit.

### B. The Existing Parties Do Not Adequately Represent The Republican Committees' Interests.

The Republican Committees also have met their "minimal" burden to show inadequate representation. *See* Mot. 8–9; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Plaintiffs offer multiple arguments in response, none of which is persuasive.

*First*, they argue the wrong legal standard, suggesting that the only way a proposed intervenor can show inadequate representation is to establish (1) "collusion between the representative and an opposing party; (2) whether the representative fails in the fulfillment of his duty; [or] (3) whether the representative has an interest adverse to the proposed intervenor." Opp. 5 (citing *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227–28 (6th Cir. 1984)). However, *Triax* said *exactly the opposite*. The district court listed these three factors, but the Sixth Circuit clarified that they "cannot be said to be a comprehensive list of the circumstances where intervention of right ought to be granted." *Triax*, 724 F.2d at 1228. This proposed legal standard also conflicts with the Sixth Circuit's view that the burden for inadequate representation is "minimal," *id.* at 1227, and that the mere "*potential* for inadequate representation" is enough, *Grutter*, 188 F.3d at 400. The factors Plaintiffs urge would instead impose a high bar to intervention.

*Second*, and similarly, Plaintiffs make much of the burden of proof, noting that courts presume adequate representation when a proposed intervenor and an existing party share the same objective. *See* Opp. 6. But this is merely a starting point. Rule 24(a) asks whether the current parties represent the proposed intervenor's "*interest*." FED. R. CIV. P. 24(a)(2) (emphasis added). Federal courts routinely hold that "the possibility of divergence of interest need not be great" and "is easily made" when the representative party is the government. *Kane County v. United States*, 928 F.3d 877, 894 (10th Cir. 2019); *see Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003);

*Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001). Indeed, the Sixth Circuit has previously found inadequate representation in a similar case because the Secretary's "primary interest . . . in ensuring the smooth administration of the election" is distinct from other interests in "defending the validity of Ohio laws and ensuring that those laws are enforced." *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006). The Republican Committees' distinct interests may diverge from the Secretary's during this case. This potential is all that is required for intervention under Rule 24(a).

**II. ALTERNATIVELY, THE COURT SHOULD ALLOW THE REPUBLICAN COMMITTEES TO INTERVENE UNDER RULE 24(b).**

The Court may grant the Motion in its discretion under Rule 24(b) without addressing the Rule 24(a) factors. Rule 24(b) requires (1) a timely motion; (2) a common question of law or fact; and (3) consideration of delay or prejudice to the original parties. FED. R. CIV. P. 24(b). As the Republican Committees' Motion explained, all three favor intervention. Plaintiffs do not dispute that the Motion was timely or that there is a common question of law or fact. *See* Mot. 9. And, most importantly, intervention by the Republican Committees will not delay this case or prejudice the parties. *Id.* at 10.[1]

Plaintiffs cannot truly contest the last requirement, so they make several arguments that are beside the point. *First*, they claim that the Republican Committees' participation will "interject[] partisan politics into a non-partisan case," Opp. 6, but they fail to explain how that would prejudice them or the Court's resolution of the case. They cite no legal support for the notion that a political party cannot intervene in a case simply because the plaintiff is a non-partisan organization. Nor

---

[1] The Republican Committees can also commit to complying with the current expedited deposition schedule and will not otherwise delay discovery.

could they, as that legal principle would leave political parties with no way to protect their interests in the very elections in which their candidates run and their voters vote.

*Second*, Plaintiffs suggest that granting permissive intervention "would risk opening the litigation to similar motions by other parties and partisan interest groups." *Id*. Not so. Any other party that seeks to intervene must satisfy the requirements of Rule 24(a) or Rule 24(b). No other party has attempted to do so. Indeed, few other parties have the same interests as the Republican Committees. So it is unclear whether any other party could later satisfy all the requirements for intervention under Rule 24. In short, Plaintiffs raise a hypothetical concern that, even if realized, is insufficient to deny the Republican Committees' motion.

*Third*, Plaintiffs argue that intervention would result in "delay, undue complication, and prejudice to Plaintiffs' right to vote safely in the upcoming election." Opp. 6–7. But they do not explain how or why the Republican Committees' participation would cause any of this. The Republican Committees will not cause any delay in the resolution of this case, because they have committed to follow any schedule the Court sets. *See* Mot. 10. They have proven they can operate on an expedited basis in filing this reply, and they will file their opposition to Plaintiffs' motion for a preliminary injunction by noon on September 16, pursuant to this Court's September 9, 2020 scheduling order. Plaintiffs do not even argue that the Republican Committees' Motion is untimely, belying their claim that intervention will cause delay going forward.

Instead of supporting their bald assertions, Plaintiffs cite to a single inapposite case. Opp. 7. In *League of Women Voters of Michigan*, the court denied permissive intervention to legislators who lacked a cognizable interest in the case, reasoning that "any delay" would be "undue" in those circumstances. 2018 WL 3861731, at *2. But, as explained above, the Republican Committees do have a cognizable interest in this case. Moreover, unlike in *League of Women Voters of*

*Michigan*, there are no facts present in this case that suggest "a significant likelihood of undue delay and prejudice to the original parties." *Id.* The Republican Committees moved quickly to intervene, have not delayed the case, and will not slow it down going forward. All they ask is for the chance to protect their important interests in the rules that will govern the upcoming election.

## CONCLUSION

For the foregoing reasons and those set forth in their Motion, the Republican Committees respectfully ask the Court to grant their Motion to Intervene.

Dated:  September 15, 2020                    Respectfully submitted,

s/ *Christopher M. McLaughlin*
Christopher M. McLaughlin  (0078186)
E-mail:  cmmclaughlin@jonesday.com
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

John M. Gore (*pro hac vice*)
E-mail:  jmgore@jonesday.com
Stephen J. Kenny*
E-mail:  skenny@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Attorneys for Proposed Intervenor-Defendants*

**Pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I certify that on September 15, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                                         */s/ Christopher M. McLaughlin*
                                         *Counsel for Proposed Intervenor-Defendants*