```
 1                      UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION AT CLEVELAND

 3

 4   A. PHILIP RANDOLPH INSTITUTE        CASE NO. 1:20-cv-1908
     OF OHIO, et al.,
 5
               Plaintiffs,
 6                                       SEPTEMBER 8, 2020
          vs.
 7
     FRANK LaROSE, in his official
 8   capacity as Secretary of State
     of Ohio,
 9
               Defendant.
10

11

12

13         TRANSCRIPT OF TELECONFERENCE PROCEEDINGS

14       HELD BEFORE THE HONORABLE DAN AARON POLSTER

15              UNITED STATES DISTRICT JUDGE

16

17

18

19

20   Official Court Reporter:        Lance A. Boardman, RDR, CRR
                                     United States District Court
21                                   801 West Superior Avenue
                                     Court Reporters 7-189
22                                   Cleveland, Ohio 44113
                                     216.357.7186
23

24

25   Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription.
```

```
 1    APPEARANCES:

 2
      For the Plaintiffs:              Jon M. Greenbaum, Esq.
 3                                     James Schuster, Esq.
                                       Subodh Chandra, Esq.
 4                                     Neil Steiner, Esq.
                                       Erik Snapp, Esq.
 5                                     Pooja Chaudhuri, Esq.
                                       Lindsey Cohan, Esq.
 6                                     Theodore Yale, Esq.
                                       David Carey, Esq.
 7                                     Mariel Bronen, Esq.

 8

 9    For the Defendant:              Charles Miller, Esq.
                                      Michael Sliwinski, esq.
10                                    Matt McDonnell, Esq.

11

12    Also Present:                   Sarah Rikleen
                                       Matthew Nowling
13                                     Ryllie Jesionowski
                                       Marcus Germany
14                                     Mike Grodhaus
                                       Andre Washington
15                                     Jen Miller
                                       Tom Roberts
16                                     Ezra Rosenberg
                                       C. Ellen Connally
17                                     Beatrice Griffin
                                       Freda Levenson
18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 11:00:49 | 1 | (On the record at 11:06 a.m.) |
| 11:06:12 | 2 | THE COURT:  This is a telephone conference in |
| 11:06:15 | 3 | A. Philip Randolph Institute vs. LaRose, Case Number |
| | 4 | 1:20-cv-1908. |
| 11:06:23 | 5 | The plaintiffs filed for a motion for preliminary |
| 11:06:26 | 6 | injunction about just a few minutes before midnight on |
| 11:06:30 | 7 | Friday, so -- and this was long weekend, so this is the |
| 11:06:36 | 8 | first time we were able to get a phone conference. |
| 11:06:41 | 9 | We've got a few housekeeping issues.  One of my law |
| 11:06:47 | 10 | clerks picked up that there's some reference in the |
| 11:06:50 | 11 | pleadings to directive 20.06, but I assume it's 2020-16 that |
| 11:07:00 | 12 | the plaintiffs are challenging.  They're not challenging |
| 11:07:03 | 13 | 20.06.  Is that right? |
| 11:07:09 | 14 | MR. GREENBAUM:  Your Honor, this is Jon |
| 11:07:11 | 15 | Greenbaum. |
| 11:07:12 | 16 | That is correct.  We mistakenly filed the wrong |
| 11:07:15 | 17 | exhibits.  I appreciate Mr. Miller pointing that out to me |
| 11:07:19 | 18 | this morning.  And we have filed a directive 2020.16 as |
| 11:07:28 | 19 | errata through ECF this morning. |
| 11:07:31 | 20 | THE COURT:  Okay.  All right.  Expecting -- I |
| 11:07:38 | 21 | know we discussed this in the last phone call |
| 11:07:43 | 22 | (indiscernible audio) Monday, August 31.  There's a state |
| 11:07:49 | 23 | case in Franklin County, Ohio Democratic Party and Lewis |
| 11:07:58 | 24 | Goldfarb vs. LaRose, and an injunction hearing is set for |
| 11:08:03 | 25 | this Friday, I believe.  In that case the plaintiffs are |

| | |
|---|---|
| 11:08:09 | 1 |

seeking a declaration that the state statute does not

prohibit multiple lockboxes.  And I think the Secretary's

response to that before petitioner's latest filing today --

            UNIDENTIFIED SPEAKER:  Judge, my view --

            THE COURT:  Can I find out what the statute --

can I find out what position they're taking?

     I'd like to know what position the Secretary is taking

in that state case.  The plaintiffs are seeking a

declaration, a ruling and interpretation by the judge that

Ohio law does not prohibit multiple lockboxes if a county

board of elections wants to have them.  So I want to know

what position the Secretary's taking on that lawsuit.

            MR. MILLER:  Your Honor, this is Charles

Miller.

     You're correct about the timing of that.  That's

scheduled for a preliminary injunction hearing this Friday.

At this point in time, there's been a subpoena served upon

the Secretary of State for his personal testimony.  Our

response to that is being filed I believe as we speak.

     My understanding the position we're taking with

respect to that is that within this directive the Secretary

of State made the determination that that statute is not

ambiguous and that it requires the return to the director at

his office at the board of elections.

            THE COURT:  All right.  So if -- I take it,

| | | |
|---|---|---|
| 11:10:20 | 1 | Mr. Miller, if the state judge decides on -- rules on this |
| 11:10:28 | 2 | Friday that the statute either is ambiguous or it permits |
| 11:10:36 | 3 | multiple lockboxes, that the Secretary would follow that |
| 11:10:42 | 4 | court order? Or would he appeal? I mean, I -- |
| 11:10:48 | 5 | MR. MILLER: Yeah, Your Honor, I cannot rule |
| 11:10:51 | 6 | out an appeal of that depending upon exactly how it comes |
| 11:10:54 | 7 | down. You know, I -- there may not be an appeal but there |
| 11:10:57 | 8 | may be. |
| 11:10:58 | 9 | THE COURT: All right. But he'd either -- |
| 11:11:02 | 10 | he'd have to follow the court order or appeal it, all right? |
| 11:11:06 | 11 | I mean, he wouldn't ignore it. He'd either follow it or |
| 11:11:08 | 12 | he'd appeal. Fair enough. |
| 11:11:10 | 13 | MR. GREENBAUM: Correct. |
| 11:11:11 | 14 | THE COURT: All right. I take it it's the |
| 11:11:22 | 15 | position of the petitioners here that if the state statute |
| 11:11:28 | 16 | prohibits more than one lockbox, then that statute's |
| 11:11:32 | 17 | unconstitutional. Is that correct? |
| 11:11:39 | 18 | MR. GREENBAUM: Your Honor, Jon Greenbaum. |
| 11:11:41 | 19 | Yes, we would say that's unconstitutional. |
| 11:11:43 | 20 | THE COURT: If that's what it means? |
| 11:11:47 | 21 | MR. GREENBAUM: If that's what it means, yes. |
| 11:11:48 | 22 | THE COURT: Well, so if -- that must be part |
| 11:12:02 | 23 | of this case. I mean, if the petitioners in that case, the |
| 11:12:09 | 24 | Ohio Democratic Party and Mr. Goldfarb, prevail and the |
| 11:12:13 | 25 | state judge says, well, the statute permits multiple |

11:12:16   1   lockboxes, then will it be necessary for me to rule on the

11:12:27   2   constitutionality of the statute?

11:12:31   3              MR. GREENBAUM:  Perhaps, depending on what

11:12:35   4   ends up sort of happening after that on the --

11:12:40   5              THE COURT:  Well, we'll see.  If the Secretary

11:12:45   6   concedes that and doesn't appeal, well, that will decide

11:12:48   7   that.  And presumably that may moot the case because I --

11:12:55   8   you know, if the Court rules that multiple lockboxes are

11:12:58   9   permitted, then there's no reason for the Secretary to have

11:13:01  10   that portion of directive 2020.16.

11:13:11  11       But I guess we'll have to see what the judge does.

11:13:17  12   And if the judge -- if the judge rules that the current

11:13:24  13   state statute, which I guess is 3509.05, permits only one

11:13:43  14   lockbox, then potentially petitioners are going to have to

11:13:51  15   immediately amend their motion and have it be a frontal

11:13:55  16   challenge to the constitutionality of the statute.  Because

11:13:57  17   the directive -- it can't be unconstitutional for the

11:14:01  18   Secretary to follow Ohio law unless the law is struck down.

11:14:07  19       So essentially your challenge then would be to the

11:14:11  20   statute, not the directive.  Right?

11:14:14  21              MR. GREENBAUM:  Well, I guess it would -- I

11:14:19  22   guess it would be to both, because the directive's

11:14:31  23   following -- the directive's still the particular

11:14:38  24   implementation of the --

11:14:41  25              THE COURT:  Well, I understand that.  I

| | |
|---|---|
| 11:14:42 | 1 |
| 11:14:49 | 2 |
| 11:14:54 | 3 |
| 11:14:55 | 4 |
| 11:15:00 | 5 |
| 11:15:03 | 6 |
| 11:15:05 | 7 |
| 11:15:09 | 8 |
| 11:15:11 | 9 |
| 11:15:14 | 10 |
| 11:15:20 | 11 |
| 11:15:26 | 12 |
| 11:15:34 | 13 |
| 11:15:38 | 14 |
| 11:15:42 | 15 |
| 11:15:44 | 16 |
| 11:15:45 | 17 |
| 11:15:49 | 18 |
| 11:15:53 | 19 |
| 11:15:57 | 20 |
| 11:16:04 | 21 |
| 11:16:10 | 22 |
| 11:16:13 | 23 |
| 11:16:16 | 24 |
| 11:16:20 | 25 |

understand that. But it can't be unconstitutional for the Ohio Secretary of State to follow a valid state law.

MR. GREENBAUM: Well, it can't be unconstitutional under state law, but it can be unconstitutional under Federal law.

THE COURT: Only if the state statute is unconstitutional at least as applied to the current circumstances.

MR. GREENBAUM: Either -- I mean, either way. I understand your point, that what you're saying is our problem is with the statute as opposed to the directive.

THE COURT: If the statute prohibits the relief that you want, which is multiple lockboxes -- and multiple, what I'm really meaning is multiple -- lockboxes at multiple sites.

MR. GREENBAUM: Mm-hmm.

THE COURT: Because having -- yes, I guess in the past the Cuyahoga County Board of Elections has had two lockboxes on its site at the Board of Elections, but that really doesn't address any of your concerns. You're seeking the permission for any of the 88 county boards, board of elections, in Ohio, if it wishes, to have lockboxes at multiple sites. Correct?

MR. GREENBAUM: Correct.

THE COURT: All right. Well, if the state

| | |
|---|---|
| 11:16:22 | 1 |
| 11:16:27 | 2 |
| 11:16:32 | 3 |
| 11:16:37 | 4 |
| 11:16:40 | 5 |
| 11:16:46 | 6 |
| 11:16:53 | 7 |
| 11:16:58 | 8 |
| 11:17:01 | 9 |
| 11:17:03 | 10 |
| 11:17:09 | 11 |
| 11:17:17 | 12 |
| 11:17:18 | 13 |
| 11:17:22 | 14 |
| 11:17:23 | 15 |
| 11:17:24 | 16 |
| 11:17:25 | 17 |
| 11:17:29 | 18 |
| 11:17:36 | 19 |
| 11:17:47 | 20 |
| 11:17:57 | 21 |
| 11:18:01 | 22 |
| 11:18:05 | 23 |
| 11:18:07 | 24 |
| 11:18:14 | 25 |

statute prohibits this, the only way you can get that relief
is if I say that the state statute is not constitutional, at
least as applied to the November 4 election.

So I think that -- there's no way a Federal judge
could prohibit -- could enjoin the Secretary of State from
following a valid state law.  He has no power to do that
unless -- because that's what a state -- that's what a state
official is required to do, follow state law.

MR. GREENBAUM:  Unless -- well, actually, you
do have authority to do that if that -- if in following
state law what's happening is that state law violates the
Constitution.

THE COURT:  Right, as applied to this
election, coming up November 4.

MR. GREENBAUM:  Correct.

THE COURT:  That provision, at least that
provision of the law — I don't strike down the whole law —
that provision that prohibits multiple lockboxes at multiple
sites in a county is unconstitutional.  So that's my point.

So either -- it looks like either as of -- depending
on what the judge does — the state judge does this Friday —
that that will -- may change the contours of this lawsuit.
So we'll have to deal with that as we go.

But everyone understands that if the state judge says
that this law prohibits -- that this law prohibits the

11:18:22 1   relief that the plaintiffs are seeking, then they're going

11:18:24 2   to have to convince me that that law is unconstitutional as

11:18:28 3   applied to this election, upcoming election.

11:18:35 4       All right.  I've got to set a -- all right.  There's

11:18:41 5   something else I want to pin down.  The plaintiffs are not

11:18:52 6   seeking an order requiring any county board to have more

11:19:02 7   than one lockbox.  Is that right?

11:19:04 8           MR. GREENBAUM:  That's correct in terms of

11:19:08 9   what we asked for in the motion, that the motion --

11:19:12 10          THE COURT:  All right.  I want to make sure if

11:19:13 11  we've spent all this time litigating this that if I grant

11:19:20 12  the relief you are seeking, that you're not going to turn

11:19:23 13  around and (indiscernible audio) having looked at the

11:19:30 14  circumstances in that particular county and decide that

11:19:34 15  they're not going to have more than one lockbox, that you

11:19:37 16  don't turn around and sue them.

11:19:39 17          MR. GREENBAUM:  I think that -- well, I mean,

11:19:41 18  that would be a different case.

11:19:45 19          THE COURT:  Well, I don't want to start

11:19:49 20  spawning a whole lot of cases against individual boards.

11:19:51 21          MR. GREENBAUM:  Okay.

11:19:52 22          THE COURT:  There's not going to be time for

11:19:55 23  it, and if that's what's going to happen, I -- all right?

11:19:59 24          MR. GREENBAUM:  All right.  I -- let me

11:20:02 25  convene with our clients about that and --

11:20:07   1        THE COURT:  And also hypothetically, pick

11:20:13   2   Cuyahoga County because that's the one I live in, suppose

11:20:16   3   the Cuyahoga County Board, if I grant you relief, says,

11:20:21   4   okay, we're going to have two off-site lockboxes.  We're

11:20:24   5   going to have the one we have at the Board and we're going

11:20:27   6   to have one on the east side of the county and one on the

11:20:30   7   west side of the county, that you're not going to turn

11:20:33   8   around and sue the board in saying two off-site ones isn't

11:20:38   9   enough, you have to have five.

11:20:43  10        MR. MILLER:  Your Honor, this is Charles

11:20:44  11   Miller on behalf of the Secretary of State.

11:20:48  12     I think that even if plaintiffs' counsel can get to

11:20:52  13   the point to where he can make that representation on behalf

11:20:55  14   of his clients, and I don't know if he could, he certainly

11:20:57  15   could not make that representation on behalf of others.

11:20:59  16        THE COURT:  Well, I understand that.  I

11:21:01  17   understand that.  But these are the lawsuits we have, all

11:21:04  18   right, and these are the -- so I just want to pin down these

11:21:13  19   particular plaintiffs.  I agree, Charles, no one can bind

11:21:17  20   anyone else.  Someone else can file any lawsuit they want.

11:21:24  21        MR. GREENBAUM:  Your Honor, I will -- I need

11:21:27  22   to confer with my clients first.

11:21:30  23        THE COURT:  All right.

11:21:30  24        MR. GREENBAUM:  But I will -- we'll get you an

11:21:35  25   answer to that.

11:21:36  1          THE COURT:  Because you understand your

11:21:38  2  argument -- your argument doesn't say that there's some --

11:21:45  3  there's nothing in your motion, you're not seeking an order

11:21:48  4  saying that it's constitutionally required in any given

11:21:53  5  county to have more than one or how many.  So I'm not -- I'm

11:22:00  6  not going to be engaged in any fact finding, and there

11:22:03  7  aren't going to be any witnesses that are going to be

11:22:05  8  presenting any testimony on that.

11:22:12  9          MR. GREENBAUM:  Your Honor, like I said, I

11:22:15  10  heard your point that whatever relief we're going to seek

11:22:19  11  with respect to this needs to be all wrapped up into one.

11:22:25  12  And as you directed, we have many of our clients on this

11:22:28  13  call.

11:22:29  14          THE COURT:  All right.  Well, I want you to

11:22:30  15  caucus and get back to us quickly with some filing, because,

11:22:35  16  candidly, there isn't going to be any time for a whole lot

11:22:38  17  of what I'll call spinoff litigation from this one, even if

11:22:41  18  you prevail.  If you don't prevail, you obviously have an

11:22:44  19  appeal.  If you do prevail, you know, it will be by the end

11:22:51  20  of September, all right?  People are going to start voting

11:22:54  21  the first week of October.

11:22:55  22          MR. GREENBAUM:  Understood.

11:22:55  23          THE COURT:  So there's not going to be time

11:22:57  24  for a whole lot of satellite litigation anyway, but I don't

11:23:01  25  want to be spawning it or even engaging in this if that's

11:23:04   1   what we're going to have.  Because it's important that

11:23:10   2   people have certainty.

11:23:12   3        You know, you've got 88 different boards.  They're

11:23:15   4   going to have to decide and make a decision.  And you can't

11:23:20   5   have uncertainty with elections.  Everyone needs to know

11:23:23   6   what they're going to be able to do and what the procedures

11:23:26   7   are and then they do it.  So I want you to caucus and make a

11:23:35   8   filing quickly on that.

11:23:36   9                    MR. GREENBAUM:  Understood, Your Honor.

11:23:38  10                    THE COURT:  All right.

11:23:40  11                    MR. SCHUSTER:  Judge, this is Jim Schuster.

11:23:43  12   Pursuant to the motion for a preliminary injunction with a

11:23:47  13   memo, it was meant to convey that the decree is

11:23:52  14   unconstitutional whether it be way of a statute which is

11:23:58  15   interpreted to allow or to require the directive or not.  So

11:24:08  16   it's still a challenge on the decree and challenging the

11:24:13  17   decree whether or not state law requires or does not require

11:24:19  18   or is ambiguous, so --

11:24:22  19                    THE COURT:  Well, I can easily dismiss that,

11:24:25  20   all right?  I'm not even going to --

11:24:29  21                    MR. SCHUSTER:  Okay.

11:24:30  22                    THE COURT:  If the state law doesn't

11:24:32  23   require -- if the state law -- I mean, LaRose has already

11:24:37  24   said publicly if the state law doesn't require it, doesn't

11:24:41  25   mandate a limit, he wouldn't order it.  Is that --

11:24:46    1    Mr. Miller, that's correct, your -- I mean --

11:24:49    2                    MR. MILLER:  Yes, Your Honor.

11:24:50    3                    THE COURT:  All right.  So if the state

11:24:52    4    statute -- Secretary of State LaRose isn't going to order

11:25:01    5    people to follow a procedure that the state law doesn't

11:25:03    6    mandate.  If the state law permits a board to have multiple

11:25:07    7    lockboxes, Secretary of State LaRose isn't going to enjoin

11:25:13    8    them that they can only have one, right?

11:25:15    9                    MR. SCHUSTER:  What I was saying is to the

11:25:16   10    extent the statute is interpreted to only allow for one drop

11:25:22   11    box location, the directives being issued, there's still the

11:25:30   12    issue of the constitutionality of the directive, whether or

11:25:34   13    not it be by virtue of the statute or not.

11:25:39   14                    THE COURT:  Well, I'm not even going to get

11:25:40   15    there because am I correct that Secretary LaRose will follow

11:25:46   16    any Federal or state interpretation of that law?  And if the

11:25:54   17    law gives boards the discretion to have more than one

11:25:58   18    lockbox, he'll let them do it.  Right?

11:26:02   19                    MR. SCHUSTER:  Yes, but if the --

11:26:04   20                    THE COURT:  I'm asking the Secretary of State

11:26:07   21    that.  I'm asking the Secretary of State that.

11:26:09   22         Right?

11:26:11   23                    MR. MILLER:  Your Honor, this is Charles

11:26:12   24    Miller.

11:26:13   25         And, yeah, my understanding is once there's a final

11:26:15  1    determination of the law that there should be multiple, you

11:26:17  2    know, he will, as you indicate, I believe happily order

11:26:23  3    multiple.

11:26:24  4                    THE COURT:  I'm sorry, would what?  I

11:26:26  5    didn't --

11:26:26  6                    MR. MILLER:  I'm sorry.  I said, yeah, I think

11:26:28  7    that once that final determination is made, as you

11:26:32  8    indicated, I think he would be happy to order multiple based

11:26:35  9    upon all of his public statements.

11:26:38  10                   THE COURT:  All right.

11:26:44  11                   MR. GREENBAUM:  That he -- I have a question,

11:26:45  12   Your Honor, for Mr. Miller, just to get clarification, if

11:26:53  13   you don't mind.  This is Jon Greenbaum.

11:26:58  14                   THE COURT:  Sure.

11:26:58  15                   MR. GREENBAUM:  I'm curious as to what the

11:27:04  16   Secretary of State would do in that instance.  And you may

11:27:07  17   not be able to answer that question.  Would the Secretary of

11:27:13  18   State merely say that counties can have more than one

11:27:20  19   lockbox if they so choose or would the Secretary of State

11:27:25  20   adopt any standard with respect to multiple lockboxes -- or

11:27:29  21   drop boxes?

11:27:31  22                   MR. MILLER:  Yeah, I can't answer that because

11:27:33  23   I think that that is subject to a lot of internal discussion

11:27:37  24   about whether -- you know, if this litigation goes in the

11:27:40  25   way or the other one goes in the way that says that there

11:27:45    1    should be multiple lockboxes, whether the Secretary of State

11:27:48    2    will promulgate standards to try to have some uniformity

11:27:52    3    with respect to that because that uniformity issue, you

11:27:56    4    know, comes up and percolates a lot in the Federal election

11:27:59    5    litigation, you know.

11:28:00    6        So I think that there is at least some contemplation

11:28:03    7    going on to whether that should occur, and so I can't say

11:28:06    8    whether that would or would not.

11:28:10    9             THE COURT:  That would be the type of lockbox

11:28:11   10    and who opens them and things like that?

11:28:14   11             MR. MILLER:  Your Honor, it could also go to

11:28:17   12    distribution.  You know, a lot of the challenges that are

11:28:23   13    being raised and in the some of the affidavits here are on

11:28:26   14    the amount of travel and how many people are served by each

11:28:30   15    lockbox, things of that nature, could potentially be subject

11:28:34   16    to a directive so that the counties would know, hey, we have

11:28:39   17    this many people and so we need this number of lockboxes,

11:28:46   18    something along those lines, potentially.

11:28:50   19             MR. GREENBAUM:  And Your Honor, Counsel for

11:28:53   20    the Secretary is right, I mean, that is a large part of our

11:28:55   21    challenge, is with respect to the uniformity issue.

11:29:03   22        So, for example, if the Secretary -- if in the state

11:29:07   23    litigation the Court ruled in the plaintiffs' favor and then

11:29:12   24    the Secretary of State came out with a directive that was

11:29:16   25    designed to create some uniformity with respect to the

11:29:24    1    number of lockboxes being tied in some way to the amount of

11:29:29    2    voters, that's the sort of solution that we would be looking

11:29:39    3    for as plaintiffs in this case.

11:29:43    4                    THE COURT:  That's what you want.  You want

11:29:45    5    something like that.

11:29:45    6                    MR. GREENBAUM:  Exactly.

11:29:47    7                    THE COURT:  All right.  Well, so ultimately,

11:30:03    8    another way -- I mean --

11:30:13    9                    MR. MILLER:  Your Honor, this is Charles

11:30:14   10    Miller.

11:30:15   11        Just while you're thinking about that, and I would

11:30:17   12    anticipate that those would be the type of discussions that

11:30:18   13    we would be having based upon the results of that state

11:30:21   14    court litigation.  Because, you know, once you get to the

11:30:28   15    point to where if there is an order for multiple, you know,

11:30:32   16    I think there's going to be a lot of work that goes into

11:30:35   17    finalizing, you know, those uniformity provisions most

11:30:39   18    likely, if it can be done in a timely way.  And, you know,

11:30:43   19    so I believe that that type of work is going on right now.

11:30:55   20                    THE COURT:  I'm just trying to figure out

11:30:58   21    exactly what we're litigating here and is it the same thing

11:31:01   22    that's being litigated in Franklin County, which doesn't

11:31:05   23    make a lot of sense.

11:31:10   24                    MR. MILLER:  Your Honor, this is Charles

11:31:12   25    Miller --

11:31:13  1          THE COURT:  Or is it different?

11:31:13  2          MR. MILLER:  Your Honor, this is Charles

11:31:14  3  Miller.

11:31:15  4      Frankly, I mean, there's so much overlap between the

11:31:19  5  two cases, they are extremely similar.  You know, on a

11:31:27  6  legal, technical basis, there were not equal protection

11:31:32  7  claims that were actually asserted in the state case, and

11:31:35  8  that's probably, you know, to remove the potential for

11:31:38  9  removal or something like that.  But, you know, we're really

11:31:44  10  talking about the same issues.

11:31:49  11          MR. GREENBAUM:  Your Honor, this is Jon

11:31:50  12  Greenbaum.

11:31:52  13          MR. MILLER:  Your Honor, I'm sorry, this is

11:31:53  14  Charles Miller.  I just need to correct something.  You

11:31:55  15  know, we're trying to -- messages is going on.

11:32:01  16      At this point in time, there is not work going on for

11:32:04  17  uniform standards for drop boxes, so that was a presumption

11:32:07  18  I was making that is actually incorrect.  So that work is

11:32:11  19  not happening right now.

11:32:12  20          MR. GREENBAUM:  Your Honor, this is Jon

11:32:13  21  Greenbaum.

11:32:13  22      Yes, both cases deal with the issue of the drop boxes

11:32:20  23  and the issue of whether there's a limitation on one drop

11:32:28  24  box site per county.  But of course we are in the two cases

11:32:35  25  challenging that on different grounds, state law grounds

11:32:43  1   versus constitutional grounds.  And that in the Federal case

11:32:49  2   sort of even if -- even if under state law it's the case

11:32:56  3   that state law requires one drop box -- only drop boxes at

11:33:04  4   one location in the county, that that could still violate

11:33:11  5   the Federal Constitution.  So there's --

11:33:14  6              THE COURT:  Well, let me ask you this, all

11:33:16  7   right?

11:33:19  8       The Secretary has said that he's going to follow the

11:33:26  9   state law.  If the state law mandates one lockbox per

11:33:32  10  county, he's going to follow it unless of course the law has

11:33:37  11  been struck down.  And if it's struck down, then he doesn't

11:33:39  12  have to follow that and he won't.  So that's pretty clear.

11:33:44  13      So hypothetically, suppose the state judge says the

11:33:54  14  law is clear and it says only one lockbox per county, all

11:34:01  15  right, do I have to follow that ruling?  Suppose I say the

11:34:09  16  statute doesn't limit any individual board to one lockbox

11:34:13  17  per county.

11:34:17  18             MR. GREENBAUM:  Your Honor, Jon Greenbaum.

11:34:18  19      Yes, I think you would have to -- you would have to

11:34:23  20  defer to the state court.

11:34:27  21             THE COURT:  Well, I have to defer to the Ohio

11:34:29  22  Supreme Court.

11:34:30  23             MR. GREENBAUM:  Right.

11:34:30  24             THE COURT:  But do I have to defer to an Ohio

11:34:33  25  trial court?

11:34:34  1          MR. MILLER:  Your Honor, this is Charles

11:34:35  2    Miller.

11:34:35  3          Actually, what you just said was going to be my

11:34:37  4    response, which is as a technical legal matter, the Federal

11:34:44  5    District Court is only required to defer to the State

11:34:48  6    Supreme Court, which is why you have the ability to certify

11:34:51  7    questions of state law to the Supreme Court.  You know,

11:34:53  8    however, I think the abstention doctrine would come in to

11:34:59  9    apply, specifically Pullman at this point in time, to where,

11:35:01  10   you know, if there -- because that issue is out there and

11:35:05  11   being litigated, typically the Federal Courts would abstain

11:35:10  12   so that there isn't that conflict of interpretation

11:35:15  13   occurring.  You would not be technically required to do so.

11:35:23  14   You know, comity principles may come into play, you know, or

11:35:27  15   a certification of the Supreme Court to speed along the

11:35:29  16   state process.  But honestly, the Ohio Supreme Court is

11:35:32  17   pretty effective at turning out election cases pretty

11:35:35  18   quickly once it got to them.

11:35:37  19          UNIDENTIFIED SPEAKER:  I'm having a hard time

11:35:38  20   hearing this.

11:35:39  21          MR. MILLER:  I apologize.  Do you need me to

11:35:41  22   resay that?

11:35:45  23          UNIDENTIFIED SPEAKER:  No.  I just missed a

11:35:46  24   little bit of it, but it was starting to crackle a little

11:35:49  25   bit.

11:35:50  1          MR. MILLER:  Okay.  (Indiscernible audio) I

11:35:54  2  think probably (indiscernible audio).

11:36:03  3          THE COURT:  Well, it seems to me what's likely

11:36:08  4  to happen, if the state judge, Franklin County, rules that

11:36:15  5  the statute does not limit any board to one drop box and the

11:36:26  6  Secretary doesn't appeal, this case becomes moot because

11:36:29  7  you'll get the relief you want.  If the judge decides that

11:36:40  8  the statute doesn't mandate one lockbox per county and the

11:36:45  9  Secretary appeals that, then this case stays alive and

11:36:52  10  I'm -- what I will have to consider is the constitutionality

11:36:57  11  of the statute as construed by that judge if I want to

11:37:04  12  follow it or defer to it or, alternatively, construe it

11:37:10  13  myself.  And if the -- so we'll have to deal with that as we

11:37:22  14  go.

11:37:22  15          So I'm going to have to -- the one thing we need is

11:37:28  16  some certainty and predictability and give -- everyone know

11:37:35  17  how they're going to vote, so -- and I have to find a day

11:37:40  18  when I'm clear for a hearing this month.

11:37:43  19          And the best day for me is Wednesday, September 23.

11:37:48  20  So I'm going to set a hearing for that day, and we'll figure

11:37:55  21  out who's going to -- what witnesses we'll need in a little

11:37:58  22  bit.

11:38:00  23          So it seems to me with that, I'm going to require the

11:38:06  24  State's response by noon on Wednesday September 16, and

11:38:13  25  that's several days after the Franklin County judge is going

```
11:38:16   1   to rule.  Presumably, he or she is going to rule from the
11:38:24   2   bench on Friday.  Although, if he takes it under advisement,
11:38:28   3   you know, he might, but I would anticipate a ruling soon.
11:38:32   4        And then the petitioner's reply, noon on Monday,
11:38:36   5   September 21.
11:38:40   6        And I'm thinking we should start the hearing 9, 9:30.
11:38:44   7   We've got to figure out how long it's going to take and what
11:38:48   8   witnesses we're going to have.
11:38:54   9        We have a number of declarations.  Obviously we can --
11:39:03  10   I don't know, you know, people are free to take depositions
11:39:06  11   between now and the hearing, depose any of those people.
11:39:13  12   I'm not sure if there -- exactly what facts are in dispute.
11:39:23  13   I think that plaintiffs need to establish that there are
11:39:26  14   boards of elections which would have multiple off-site
11:39:35  15   lockboxes if they were permitted to do it.  Otherwise,
11:39:37  16   there's -- this is an advisory opinion or a theoretical
11:39:45  17   where there's no reason to decide.  So I think we need -- we
11:39:50  18   don't need 88, but --
11:39:53  19        How many boards would you have testify, Mr. --
11:40:02  20   Jonathan, how many would you propose?
11:40:05  21             MR. GREENBAUM:  Probably a small handful, Your
11:40:07  22   Honor, focused in some of the largest counties.
11:40:11  23             THE COURT:  That's what I would suggest.  Of
11:40:18  24   course, we're going to do this by Zoom, so no one has to
11:40:21  25   travel.  And the public won't be able to watch, but they'll
```

| | | |
|---|---|---|
| 11:40:26 | 1 | be able to listen to the entire hearing because of course |
| 11:40:31 | 2 | it's a public hearing.  But that's just the reality of the |
| 11:40:34 | 3 | technology. |
| 11:40:43 | 4 | The concern about the mail, I don't know how we |
| 11:40:48 | 5 | litigate that.  There is a concern, all right?  I mean, and |
| 11:40:53 | 6 | it's been created by a number of people.  There's no way to |
| 11:41:00 | 7 | prove what might happen on November -- you know, if a whole |
| 11:41:05 | 8 | lot of people vote by mail. |
| 11:41:10 | 9 | I mean, the way it works in Ohio, for your ballot to |
| 11:41:14 | 10 | be counted it must be postmarked by midnight the day before, |
| 11:41:19 | 11 | Monday, November 3.  Correct?  Vote by mail, you'd have to |
| 11:41:23 | 12 | have a postmark of November 3? |
| 11:41:26 | 13 | MR. MILLER:  This is Charles Miller. |
| 11:41:27 | 14 | Yes, that is correct. |
| 11:41:28 | 15 | THE COURT:  And then, Charles -- |
| 11:41:30 | 16 | MR. MILLER:  Your Honor, I'm sorry, it would |
| 11:41:32 | 17 | be the 2nd because that's the Monday. |
| 11:41:34 | 18 | THE COURT:  Right, sorry.  Tuesday is the 3rd. |
| 11:41:37 | 19 | It needs to be postmarked before midnight on November 2, |
| 11:41:40 | 20 | Monday the 2nd.  And then it has to be received by the |
| 11:41:49 | 21 | board, respective board of your county, no later than |
| 11:41:51 | 22 | Friday, November 13, if I did the counting right and looked |
| 11:41:56 | 23 | at the statute. |
| 11:41:57 | 24 | Is that right? |
| 11:41:58 | 25 | MR. MILLER:  Your Honor, Charles Miller. |

| | |
|---|---|
| 11:41:59 | 1 |
| 11:42:02 | 2 |
| 11:42:06 | 3 |
| 11:42:10 | 4 |
| 11:42:21 | 5 |
| 11:42:24 | 6 |
| 11:42:25 | 7 |
| 11:42:29 | 8 |
| 11:42:34 | 9 |
| 11:42:40 | 10 |
| 11:42:43 | 11 |
| 11:42:50 | 12 |
| 11:42:51 | 13 |
| 11:42:54 | 14 |
| 11:43:01 | 15 |
| 11:43:01 | 16 |
| 11:43:04 | 17 |
| 11:43:08 | 18 |
| 11:43:13 | 19 |
| 11:43:17 | 20 |
| 11:43:17 | 21 |
| 11:43:18 | 22 |
| 11:43:22 | 23 |
| 11:43:24 | 24 |
| 11:43:30 | 25 |

That is correct, 10 days following the election day.

THE COURT: Right. So that means the post office has from Monday the 2nd to the following Friday the 13th to get the ballots delivered.

MR. GREENBAUM: Your Honor, this is Jon Greenbaum.

The primary issues that we have in terms of the mail aren't so much that -- the person putting it in the mail on November 2 and whether that would be received by the 13th, but the fact that there are multiple steps in this process in terms of a voter has to request an absentee ballot, a --

THE COURT: No, they don't, they don't. The Secretary took care of that. Everyone, every registered voter got an absentee ballot application in the mail last week.

MR. GREENBAUM: Sure, but the voter has to request it. In other words, the voter has to send in that form, and then the ballot has to be sent out to the voter and the voter has to return the ballot. That's my only point.

THE COURT: Understood, understood. But everyone has plenty of time for that if they don't delay. I mean, obviously if you wait till the week before the election to request your ballot, you know --

MR. SCHUSTER: And, Judge -- this is Jim

11:43:33  1  Schuster -- I believe there are some concerns with regard to

11:43:36  2  the amount of time it will take the post office to actually

11:43:42  3  get the ballot in to the board of elections (indiscernible

11:43:49  4  audio) November 2nd, you know, based on a declaration that

11:43:53  5  was offered with regard to the logistics and with regard to

11:43:58  6  the changes and actions that have been made by the USPS to

11:44:01  7  effectively delay the mail.

11:44:04  8          THE COURT:  There's concerns, but the point is

11:44:05  9  I don't -- you know, no one can prove any of this.  This is

11:44:11  10  a matter of speculation at this point.  There's a lot of

11:44:16  11  anxiety, and I think the Court can take judicial notice that

11:44:21  12  there's a lot of anxiety over the ability of the postal

11:44:24  13  service to handle a large volume of mail.

11:44:28  14          MR. SCHUSTER:  And, Judge, this is Jim

11:44:30  15  Schuster again.

11:44:31  16      Just on that declaration, it does walk through the

11:44:33  17  steps on the amount of time it would take from one step to

11:44:37  18  the next step to the following step.  And, you know,

11:44:42  19  granted, there is some, you know, working room with regard

11:44:49  20  to the estimates, but there is an estimate between 11 and 17

11:44:52  21  days given the significant rush that would be right at the

11:44:56  22  heels of the election.

11:45:02  23          THE COURT:  Are you saying an estimate of 11

11:45:04  24  to 17 days to deliver ballots that are put in the -- that

11:45:13  25  are mailed?

11:45:13  1          MR. SCHUSTER:  Yes, it could be by that much,

11:45:15  2   yes.

11:45:20  3          THE COURT:  Well, I guess we'll need some

11:45:22  4   testimony -- someone's going to testify to that.  I guess

11:45:25  5   you ought to have at least one witness who's going to

11:45:28  6   (indiscernible audio) on that.

11:45:31  7          MR. SCHUSTER:  Yes.

11:45:42  8          THE COURT:  All right.  So we'll have one

11:45:43  9   witness on potential postal delays.

11:45:48  10         MR. MILLER:  This is Charles Miller.

11:45:50  11      Just to clarify, is that an active USPS supervisor or

11:45:55  12  something you're having testify?

11:45:58  13         MR. SCHUSTER:  This is an individual who is

11:46:01  14  with the National Association of Letter Carriers who was a

11:46:07  15  letter carrier for approximately 40 years and is intimately

11:46:11  16  familiar with the processes of the USPS.

11:46:16  17         THE COURT:  I think he's the person who

11:46:18  18  submitted a declaration.  Right?

11:46:20  19         MR. SCHUSTER:  Yes, Judge, that's correct.

11:46:22  20  This is Jim Schuster again.

11:46:24  21      It would be Exhibit A to the memorandum in support of

11:46:30  22  preliminary injunction.

11:46:33  23         THE COURT:  All right.  So if we have that --

11:46:38  24  what's that person's name again?

11:46:41  25         MR. SCHUSTER:  Yes, his name is David Ditchey,

11:46:44  1   D as in --

11:46:46  2               THE COURT:  I got it.  David Ditchey.

11:46:49  3               MR. SCHUSTER:  Okay.

11:46:50  4               THE COURT:  All right.  You've got David

11:46:51  5   Ditchey.  You've got maybe three or four of largest county

11:47:02  6   boards.

11:47:02  7        So who else would the plaintiffs be calling?

11:47:04  8               MR. GREENBAUM:  Your Honor, we probably would

11:47:06  9   call at least our expert who estimated the delays caused by

11:47:16  10  only having the one drop box location.

11:47:22  11              THE COURT:  Who would that -- who is that?

11:47:25  12              MR. GREENBAUM:  That's Daniel Chatman.

11:47:28  13              THE COURT:  All right.  He's got a

11:47:32  14  declaration.  All right, we'll have Mr. Chatman.  Okay.

11:47:34  15              MR. GREENBAUM:  And, you know, we would have

11:47:36  16  to think about some others.  You know, obviously we want to

11:47:42  17  provide a tight presentation.  We also want to provide a

11:47:46  18  complete one.

11:47:48  19              THE COURT:  Okay.

11:47:48  20              MR. GREENBAUM:  And I don't know to what

11:47:52  21  degree, you know, in terms of witnesses that we've submitted

11:47:56  22  declarations for, whether you'll accept those declarations

11:47:58  23  or how far we need to go beyond them.

11:48:01  24              THE COURT:  I'll accept that the county can --

11:48:04  25  you know, the State can in its declaration.

11:48:06 1    So, Mr. Miller, in terms of witnesses, I'm just trying

11:48:10 2  to schedule this.  Would you envision calling witnesses?

11:48:16 3              MR. MILLER:  Your Honor, we're still kind of

11:48:18 4  processing everything that they have here and trying to

11:48:21 5  determine if we need, you know, some sort of

11:48:28 6  counterdeclarance with respect to particularly Chatman

11:48:31 7  there, and -- I'm sorry, I forget his name, the retired

11:48:36 8  postal worker.  I guess it's Ditchey.

11:48:42 9    Outside of that, I can't think of anybody right now,

11:48:46 10  but we would certainly update everyone if that changes.

11:48:49 11              THE COURT:  All right.  Well, you should do

11:48:53 12  that because the plaintiffs might want to depose him or her,

11:48:55 13  and obviously you can depose any of these folks between now

11:48:58 14  and the hearing.

11:49:06 15              MR. MILLER:  Yes.  So right now, Your Honor, I

11:49:09 16  think that we would probably be anticipating two to three.

11:49:13 17              THE COURT:  All right.  Can you give us an

11:49:15 18  idea of who they might be or what they'd be testifying

11:49:18 19  about?

11:49:20 20              MR. MILLER:  As I just indicated, Your Honor,

11:49:24 21  I think that the two would be in response to those two

11:49:28 22  experts, Mr. Ditchey and Mr. Chatman, so that would be kind

11:49:31 23  of the postal service situation potentially and the, you

11:49:37 24  know, 53 hours of wait time at the board of elections to

11:49:41 25  drop off a ballot as Mr. Chatman said.

11:49:45    1          THE COURT:  Okay, fair enough.

11:49:47    2      All right.  Well, fortunately, I don't have

11:49:58    3  anything -- I don't have anything scheduled other than this

11:50:00    4  for that day, so I think I'm suggesting -- why don't we

11:50:05    5  start at 9:30 on the 23rd, and we'll just go as long as we

11:50:18    6  need to go.  We'll obviously take a lunch break if we get to

11:50:22    7  noon and we aren't done.

11:50:29    8          MR. MILLER:  Your Honor, this is Charles

11:50:30    9  Miller.

11:50:32   10      You know, because this is kind of a Zoom thing and --

11:50:36   11  I just want to understand, do you anticipate there kind of

11:50:38   12  being opening arguments and things of that nature or do you

11:50:42   13  want --

11:50:42   14          THE COURT:  Well, we can talk about that.  You

11:50:50   15  know, we can have very brief opening statements, Charles.

11:50:52   16  You know, I think I understand from the pleadings where

11:50:55   17  we're going.  At least I certainly know the petitioners',

11:51:00   18  and then I'll see your response.  But I don't know exactly

11:51:05   19  what the State's position is going to be other than -- I

11:51:08   20  know you're going to take the position that you're following

11:51:12   21  the law, okay, and that's what you should do, okay?  So your

11:51:19   22  position will be -- but, again, I don't know what your

11:51:22   23  position's going to be if --

11:51:26   24          MR. MILLER:  Your Honor, our position will be

11:51:29   25  that, you know, one drop box location per county is

| | |
|---|---|
| 11:51:33 | 1 |
| 11:51:36 | 2 |
| 11:51:39 | 3 |
| 11:51:43 | 4 |
| 11:51:46 | 5 |
| 11:51:51 | 6 |
| 11:51:54 | 7 |
| 11:51:55 | 8 |
| 11:52:01 | 9 |
| 11:52:03 | 10 |
| 11:52:07 | 11 |
| 11:52:10 | 12 |
| 11:52:15 | 13 |
| 11:52:18 | 14 |
| 11:52:21 | 15 |
| 11:52:29 | 16 |
| 11:52:33 | 17 |
| 11:52:36 | 18 |
| 11:52:40 | 19 |
| 11:52:45 | 20 |
| 11:52:48 | 21 |
| 11:52:52 | 22 |
| 11:53:00 | 23 |
| 11:53:05 | 24 |
| 11:53:10 | 25 |

constitutional and does not violate equal protection.

THE COURT:  All right.  That's your -- you think under the circumstances -- under these circumstances as we have in November, given the pandemic and whatever anxiety there is about the postal service, the one drop box at the board is sufficient, right?

MR. MILLER:  Yes, Your Honor.

THE COURT:  Okay.  All right, fine.  Then --

MR. MILLER:  And of course, yes, as a matter of constitutional law, yes.

THE COURT:  Right.  All right.  Well, then that's what we'll litigate.  And of course, it may all be moot if you're given the permission to give board -- if the statute gives the permission to have the boards have multiple ones, this is going to be moot.  But if it doesn't, then we've got to litigate -- we've got to litigate essentially the law, and you'll be defending the law on this basis.  All right.

So, again, we'll start at 9:30.  If we're done at noon, we're done at noon.  If not, we'll take a lunch break and then pick it up.  Probably break for about at least 45 minutes and then resume.

And my intent is to make a ruling that day based on what I've read before and what I hear, because, you know, we're all going to be at the end of September and people

11:53:14  1     will be starting to vote.

11:53:18  2          Well, when exactly do they start voting?  Three days

11:53:22  3     before the election?  I know the first week of October.

11:53:25  4                    MR. MILLER:  This is Charles Miller.

11:53:27  5          Your Honor, it would begin four weeks before, so it

11:53:29  6     would be October 6.

11:53:31  7                    THE COURT:  Okay.  October 6.

11:53:34  8                    MR. MILLER:  Yes, Your Honor.  So that will be

11:53:36  9     about two weeks after.

11:53:37  10                   THE COURT:  That's the first day that someone

11:53:39  11    could go in person at a board or complete and mail in your

11:53:49  12    ballot, your absentee ballot.

11:53:52  13                   MR. MILLER:  Yes, Your Honor.  I believe

11:53:53  14    that's also the day that the absentee ballots will start

11:53:59  15    being mailed.

11:53:59  16                   THE COURT:  That's what I figured.  So ballots

11:54:01  17    to be mailed --

11:54:04  18                   MR. SCHUSTER:  So with the ballots not being

11:54:07  19    mailed until October 6 for the mail-in purposes, you're not

11:54:10  20    going to be getting any in ballots, any actual ballots

11:54:14  21    because it's going to have to be sent and mailed to the

11:54:17  22    individual voter, and then the individual voter would have

11:54:19  23    to turn around and then mail it back to the board of

11:54:23  24    elections.  That's all assuming that they have requested an

11:54:28  25    absentee ballot and it starts with the ballot being mailed

11:54:35  1    on October 6.

11:54:38  2              THE COURT:  All right.  Well, lots of people

11:54:40  3    will have because, again, every voter in the state received

11:54:44  4    an application last week, so that's a month before.  So

11:54:49  5    anyone --

11:54:52  6              MR. SCHUSTER:  It assumes that they're going

11:54:55  7    to complete that because the Ohio Secretary of State has

11:54:58  8    actually suggested that the voters send it in no later than

11:55:03  9    October 27.  And you can imagine sending in an absentee

11:55:07  10   ballot application on the 27th and the incredible tight

11:55:14  11   turnaround times that would be necessary to actually get the

11:55:16  12   ballot in.

11:55:17  13        What my point was is that even assuming that they have

11:55:21  14   requested an absentee ballot and it has been recognized by

11:55:27  15   the board of elections on October 6, the board of elections

11:55:31  16   will still need to send the ballot out to the individual and

11:55:34  17   then in turn, but for the availability and sufficiency of

11:55:39  18   drop boxes, the individual voter would then have to mail it.

11:55:43  19   And that takes time as well to get to the board of

11:55:46  20   elections.  And it's -- it becomes much more of an issue the

11:55:50  21   closer you get in your election time.

11:55:52  22             THE COURT:  Well, obviously.  But no one has

11:55:54  23   to wait till October the 27th to mail their absentee ballot

11:56:03  24   application since they got them the first week in September.

11:56:06  25             MR. SCHUSTER:  That's correct, Judge.  But

11:56:08    1    there's a -- but, you know, it does indicate -- it makes

11:56:16    2    a -- the Secretary of State seems to make a suggestion that

11:56:20    3    if you do it by as late as the 27th, you should be okay,

11:56:25    4    which is concerning.  And the statute also allows it as

11:56:30    5    well, but the reality of the situation, by relying on the

11:56:34    6    mail, it becomes a very tenuous situation.

11:56:39    7                    MR. MILLER:  Your Honor, this is Charles

11:56:40    8    Miller.

11:56:40    9        It's just ironic that we're typically facing

11:56:44    10    challenges saying that we don't allow people to put in

11:56:46    11    applications closer to the date of election, don't allow

11:56:50    12    people to vote in person closer to the date of election, and

11:56:53    13    now we're being told that we're having it too close.

11:56:59    14                    MR. SCHUSTER:  I'm not --

11:57:00    15                    MR. MILLER:  We're always getting pulled in

11:57:02    16    multiple directions.

11:57:03    17                    MR. SCHUSTER:  I'm not saying that.

11:57:18    18                    THE COURT:  All right.  The point is no one

11:57:19    19    has to wait until October 27.  They got their absentee

11:57:24    20    ballot form the first week of September, so -- all right.

11:57:31    21        So that will be the schedule.  And obviously I'll be

11:57:38    22    monitoring what the Franklin County judge does and read his

11:57:48    23    ruling.  And again, if he construes the statute the way the

11:57:52    24    plaintiffs are asking, then I think this case will become

11:57:59    25    moot unless the Secretary appeals, but I don't know why he'd

| 11:58:05 | 1 | appeal.  But we'll be monitoring that. |

2    All right.  I think that covers everything I needed to

3    say.  Anything anyone from either side wants to add?

4    Again, I do want -- no later than noon on Thursday I

5    want the plaintiffs to file something in response to my

6    request that they confer -- that they agree that this is all

7    the relief they're going to ask.  They're not going to then

8    turn around and sue individual boards if they get the

9    discretion they're seeking, saying the board acted

10    unconstitutionally for not using its discretion or they

11    unconstitutionally used their discretion to have only two

12    lockboxes and they should have had five or six or whatever.

13    So I want a filing by noon, Thursday the 10th.

14            MR. GREENBAUM:  Understood, Your Honor.

15        Jon Greenbaum.

16            MR. MILLER:  Your Honor, Charles Miller.

17        You asked if we had any other concerns or issues.

18    Will we anticipate maybe late next week receiving

19    instructions on, you know, handling of exhibits and things

20    of that nature with respect to the Zoom trial?  I'm familiar

21    with the Sixth Circuit, how that works, but not Zoom trials

22    or hearings.

23            THE COURT:  Well, that's a good point.  This

24    is actually my first Zoom hearing like this.

25        Yeah, I think everyone should exchange exhibits.  I

12:00:00  1   mean, I don't think we're going to -- I don't know what

12:00:02  2   other exhibits we're going to have.  We have -- you know,

12:00:05  3   there may be some plaintiffs have attached exhibits,

12:00:10  4   declarations, whatever.  The State may have some in its

12:00:13  5   filing.  But I agree, we should have those exchanged and

12:00:18  6   copies to the Court.

12:00:22  7                  MR. MILLER:  Your Honor, I'm -- again, this is

12:00:26  8   Charles Miller.

12:00:26  9       I'm curious if the Court will have some sort of

12:00:30  10  mechanism, you know, so that one of the Zoom screens would

12:00:33  11  be the exhibits or, you know, how that might be done, just

12:00:36  12  so we know that people are looking at the same thing.

12:00:39  13                 THE COURT:  I'll get some directives on that,

12:00:40  14  how we're going to handle exhibits.  I'll have my staff get

12:00:51  15  me directives on that.

12:00:53  16                 MR. MILLER:  Thank you, Your Honor.

12:00:53  17                 THE COURT:  So that the witness, for example,

12:00:55  18  if you're showing the witness an exhibit, how the witness

12:00:57  19  sees it.

12:01:00  20                 MR. MILLER:  Yes, Your Honor.

12:01:03  21                 THE COURT:  All right.  We'll get some

12:01:04  22  directives out in the next few days.  But I want any

12:01:09  23  exhibits -- it seems to me they should be exchanged no later

12:01:16  24  than noon on Monday, the 21st, with copies to the Court.

12:01:22  25  That's the deadline for petitioner's reply, so obviously

| | |
|---|---|
| 12:01:26 | 1 |
| 12:01:32 | 2 |
| 12:01:33 | 3 |
| 12:01:34 | 4 |
| 12:01:35 | 5 |
| 12:01:37 | 6 |
| 12:01:38 | 7 |
| 12:01:40 | 8 |
| 12:01:45 | 9 |
| 12:01:47 | 10 |
| 12:01:52 | 11 |
| 12:01:59 | 12 |
| 12:02:02 | 13 |
| 12:02:05 | 14 |
| 12:02:06 | 15 |
| 12:02:13 | 16 |
| 12:02:18 | 17 |
| 12:02:22 | 18 |
| 12:02:25 | 19 |
| 12:02:28 | 20 |
| 12:02:31 | 21 |
| 12:02:38 | 22 |
| 12:02:41 | 23 |
| 12:02:47 | 24 |
| 12:02:52 | 25 |

you'll know any exhibits and the State should know by then.

So how does that sound?

MR. MILLER:  Your Honor, Charles Miller.

That works for the defendant.

MR. GREENBAUM:  That's okay with the

plaintiffs, Your Honor.

Jon Greenbaum.

THE COURT:  So 9/21 with copies to the Court.

So just mail them to the Court, all right, and they will

have them.

Okay.  All right.  Anything else?

That was a good point.  We'll get directives out on

that.  And obviously we'll get -- everyone will have the

Zoom site.

And I think this is how we'll do it.  Make sure all

your witnesses have the Zoom site, and then we'll only have

one witness at a time.  So witness number one, you know,

would be on there right at the beginning, and then

plaintiffs are going first, so you just -- as soon as

witness number one is done, we just e-mail witness number

two to call in, Zoom in.  And I'll leave it to each lawyer

to do that because you'll have the order of your witnesses.

And then when we finish the plaintiffs, then we'll go to the

defendant's witnesses.  So we only have one witness -- only

one witness testifies at a time.

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
| 12:02:54 | 1  | And we'll have each lawyer just -- we'll get the links                   |
| 12:02:57 | 2  | out to people in advance so they'll be prepared, and then                |
| 12:03:00 | 3  | you'll just -- you'll notify them as soon as witness one is              |
| 12:03:05 | 4  | done, witness two calls in, et cetera.  That should work.                |
| 12:03:10 | 5  | MR. MILLER:  All right, Your Honor.  This is                             |
| 12:03:12 | 6  | Charles Miller.                                                          |
| 12:03:12 | 7  | I think that will work.  And there is the ability to                     |
| 12:03:16 | 8  | hold people in the waiting room until you want them.                     |
| 12:03:19 | 9  | THE COURT:  All right.  We can also do that.                             |
| 12:03:20 | 10 | Okay.  I think what we'll do is this.  I'm not going                      |
| 12:03:33 | 11 | to schedule another phone call, but if -- when we get a                  |
| 12:03:38 | 12 | ruling from the state court, if I need a quick phone call,               |
| 12:03:43 | 13 | I'll schedule it.  And I like to make sure, because we've                |
| 12:03:47 | 14 | got a compressed time schedule, that everyone monitors their             |
| 12:03:52 | 15 | e-mails over the weekend in case there was communication                 |
| 12:03:57 | 16 | from the Court, you know, over the weekend, which there                   |
| 12:04:00 | 17 | could be.                                                                |
| 12:04:01 | 18 | I don't know when the judge will make his ruling.  He                    |
| 12:04:05 | 19 | may make it -- again, has the judge indicated if he's going              |
| 12:04:08 | 20 | to rule from the bench on Friday, given any indication?                  |
| 12:04:11 | 21 | MR. MILLER:  Your Honor, this is Charles                                 |
| 12:04:12 | 22 | Miller.                                                                  |
| 12:04:13 | 23 | He has not given that indication yet, but I am like                      |
| 12:04:21 | 24 | you, I anticipate that he will.  In addition to that, as                 |
| 12:04:25 | 25 | soon as we get that order from him or ruling and it's                    |

12:04:30  1    relayed to me, I will send it to everyone on the e-mail

12:04:32  2    chain here.

12:04:34  3              THE COURT:  All right.  That's good.  Thank

12:04:35  4    you, Charles.

12:04:39  5        All right.  Well, that -- depending on what the ruling

12:04:42  6    is, I may want to have a phone conference so we know exactly

12:04:48  7    what we're going to be -- maybe we won't need to litigate

12:04:54  8    anything.  That would be the nice thing.  If he just says

12:04:57  9    the statute doesn't prohibit multiple lockboxes, that should

12:05:00 10    end it.  We won't have to do much of anything.  But if it

12:05:06 11    goes the other way, we'll (indiscernible audio).  So if we

12:05:10 12    need another phone call, I'll have it.

12:05:13 13        Okay.  Thanks everyone.  Stay safe.

12:05:15 14              (Proceedings adjourned at 12:05 p.m.)

         15                        *  *  *  *  *

         16                  **C E R T I F I C A T E**

         17

         18        I certify that the foregoing is a correct transcript

         19    of the record of proceedings in the above-entitled matter

         20    prepared from my stenotype notes.

         21

         22              */s/ Lance A. Boardman*_____     *09-15-2020*
                         Lance A. Boardman, RDR, CRR              DATE
         23

         24

         25